IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---

RONALD PALMIERI,                          CASE NO. 08-cv-2435

        Plaintiff,                 Civil Action

v.

COUNTY OF OCEAN and WILLIAM
POLHEMUS,

        Defendants.

---

PLAINTIFF'S BRIEF IN OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT

---

FRANK L. CORRADO, ESQUIRE
BARRY, CORRADO, GRASSI & GIBSON, P.C.
2700 Pacific Avenue
Wildwood, NJ  08260
(609) 729-1333
Attorneys for Plaintiff


Return Date: November 16, 2009

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................. i

TABLE OF AUTHORITIES ........................................... ii

I.   INTRODUCTION AND SUMMMARY OF ARGUMENT ..................... 1

II.  STATEMENT OF THE FACTS .................................... 3

III. ARGUMENT .................................................. 3

     A.   As a Constitutional Officer and Statutory
          Head of the Sheriff's Department, Solely
          Responsible for Its Policies and Operations,
          Polhemus Is A "Final Policymaker" For The
          Department's Campaign of Retaliatory
          Harassment. ........................................ 5

     B.   The First Amendment Protects Palmieri's
          Speech. ............................................ 9

          1.   Palmieri's criticism of Polhemus and his
               department was the protected political
               speech of a citizen-candidate, not an
               internal employee grievance. ............... 10

          2.   Defendants offer no evidence that
               Palmieri's protected speech disrupted
               the department's operations. ............... 14

     C.   Because Palmieri Has Produced Evidence of
          Retaliatory Motive, Defendants' Claim of a
          Legitimate Justification Merely Creates a
          Factual Issue That Cannot Be Decided on
          Summary Judgment. ................................. 15

     D.   Palmieri Has Presented Sufficient Evidence of
          Injury To Meet The Minimal Standards of the
          First Amendment. .................................. 16

     E.   Palmieri's Complaints About Polhemus's
          Harassment, And Ensuing Ongoing Retaliation,
          Are Adequately Supported By Evidence and
          Support A CEPA Claim. ............................. 17

     F.   Palmieri's CEPA Claim Does Not Trigger a

Waiver of His State Constitutional Claim. ........... 19

G.   Because Palmieri's Speech Was Protected and
     Because His Right to Be Free of Retaliation
     Was Clear, Polhemus Is Not Entitled To
     Qualified Immunity ................................. 20

IV.   CONCLUSION ............................................. 22

## TABLE OF AUTHORITIES

**CASES**

Abramson v. William Paterson College, 260 F.3d 265 (3rd
    Cir. 2001) ..................................................... 16

Anchorage Associates v. Virgin Islands Bd. of Tax Rev.,
    922 F.2d 168 (3rd Cir. 1989) ................................. 4

Anderson v. Creighton, 483 U.S. 635 (1987) ............... 20, 21

Anderson v. Davila, 125 F.3d 148 (3rd Cir. 1997) ............. 13

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) .......... 3

Andrews v. City of Philadelphia, 895 F.2d 1469 (3rd
    Cir. 1990) ..................................................... 7

Baldasarre v. State of New Jersey, 250 F.3d 188 (3rd
    Cir. 2001) ......................................... 10, 14, 22

Bennis v. Gable, 823 F.2d 723 (3rd Cir. 1987) ................ 21

Big Apple BMW, Inc. v. BMW of North Amer., Inc., 974
    F.2d 1358 (3rd Cir. 1992) ..................................... 4

Branti v. Finkel, 445 U.S. 507 (1980) ....................... 21

Brennan v. Norton, 350 F.3d 399 (3rd Cir. 2003) .............. 13

Brooks v. Kyler, 204 F.3rd 102 (3rd Cir. 2000) ............... 3

Cacciatore v. County of Bergen, 2005 WL 3588489 (D.
    N.J. 2005) .................................................. 7, 8

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) ............. 3, 4

Connick v. Myers, 461 U.S. 138 (1983) ................ 10, 13, 14

Curinga v. City of Clairton, 357 F.3d 305 (3rd Cir.
    2004) ............................................... 10, 15

Czurlanis v. Albanese, 721 F.2d 98 (3rd Cir. 1983) ............ 13

Doe v. Delie, 257 F.3d 309 (3rd Cir. 2001) .................... 21

Dzwonar v. McDevitt, 177 N.J. 451 (2003) ..................... 18

Elrod v. Burns, 427 U.S. 347 (1976) .......................... 22

Eu v. San Francisco County Democratic Cent. Comm., 489
    U.S. 214 (1989) .......................................... 11

Garcetti v. Ceballos, 547 U.S. 410 (2006) ................ 9, 11

Green v. Jersey City Bd. of Educ., 177 N.J. 434 (2003) ........ 18

Hancock v. Borough of Oaklyn, 347 N.J. Super. 350 (App.
    Div. 2002) ............................................... 19

Harlow v. Fitzgerald, 475 U.S. 800 (1982) ................... 20

Herr v. Pequea Tp., 274 F.3d 309 (3rd Cir. 2001) .............. 13

Hill v. Borough of Kutztown, 455 F.3d 225 (3rd Cir.
    2006) ..................................................... 5

In re Application of Burlington County Freeholders, 188
    N.J. Super. 343 (Law Div.), aff'd 190 N.J. Super. 256
    (App. Div. 1983), aff'd 99 N.J. 90 (1985) ................ 6, 8

In re Petit Jury Panels, 60 N.J. 554 (1972) ................... 7

Justice v. Danberg, 571 F. Supp. 2d 602 (D. Del. 2008) ....... 12

Maimone v. City of Atlantic City, 188 N.J. 221 (2006) ........ 19

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475
    U.S. 574 (1986) ........................................... 4

McCullough v. City of Atlantic City, 137 F. Supp. 2d
    557 (D. N.J. 2001) ....................................... 18

McGreevy v. Stroup, 413 F.3d 359 (3rd Cir. 2005) ........... 5, 15

McIntyre v. Ohio Elections Comm'n, 514 U.S. 334 (1995) ....... 11

iii

McMillan v. Monroe County, 520 U.S. 781 (1997) ................. 5

Monell v. Dept of Social Services, 436 U.S. 658 (1978) ........ 5

Montiero v. City of Elizabeth, 436 F.3d 397 (3rd Cir.
     2006) ..................................................... 15

Muzslay v. City of Ocean City, 238 Fed. Appx. 785 (3rd
     Cir. 2007) ............................................... 13

O'Donnell v. Yanchulis, 875 F.2d 1059 (3rd Cir. 1989) ......... 14

Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231 (3rd
     Cir. 1995) ................................................ 4

Pickering v. Board of Education, 391 U.S. 563 (1968) .. 13, 14, 21

Rankin v. McPherson, 438 U.S. 378 (1987) ...................... 9

Roth v. United States, 354 U.S. 476 (1957) ................... 12

Rutan v. Republican Party, 497 U.S. 62 (1990) ................ 17

Sandom v. Travelers Mortgage Service, Inc., 752 F.
     Supp. 1240 (D. N.J. 1990) ................................ 18

Saucier v. Katz, 533 U.S. 194, 201 (2001) .................... 21

Sheehee v. City of Wilmington, 67 Fed. Appx. 692 (3rd
     Cir. 2005) ................................................ 6

Smith v. Travelers Mortgage Services, Inc., 699 F.
     Supp. 1080 (D. N.J. 1988) ................................ 18

St. Louis v. Praprotnik, 485 U.S. 112 (1988) ................. 6

Suppan v. Dadonna, 203 F.3d 228 (3rd Cir. 2000) .......... 16, 17

Swineford v. Snyder City, Pa., 15 F.3rd 1258 (3rd Cir.
     1994) .................................................... 14

Thomas v. Collins, 323 U.S. 516 (1945) ....................... 12

Watters v. City of Philadelphia, 55 F.3d 886 (3rd Cir.
     1995) .................................................... 11

Wilson v. Layne, 526 U.S. 603 (1999) ......................... 21

Young v. Schering Corp., 141 N.J. 16 (1995) .................. 20

iv

_Zamboni v. Stamler_, 847 F.2d 73 (3rd Cir. 1988) ................ 14

**CONSTITUTIONAL PROVISIONS**

N.J. Const. (1947), Art. VII, §2, par. 2 ...................... 6

**STATUTES**

42 U.S.C. §1983 ........................................ 1, 5, 9

N.J.S.A. 34:19-1 _et seq._ .................................... 1

N.J.S.A. 34:19-3 ......................................... 18, 20

N.J.S.A. 34:19-3(a) ......................................... 18

N.J.S.A. 34:19-3(c) ......................................... 18

N.J.S.A. 34:19-8 ........................................... 19

N.J.S.A. 40A:5-22 ........................................... 8

N.J.S.A. 40A:9-117 _et seq._ ................................... 6

**RULES**

Fed. R. Civ. P. 56(c) ........................................ 3

Fed. R. Civ. P. 56(e) ........................................ 4

L.Cv.R. 56.1 .............................................. 3

I.    <u>INTRODUCTION AND SUMMMARY OF ARGUMENT</u>

This is a civil rights action, brought pursuant to 42 U.S.C. §1983.  Ronald Palmieri, an Ocean County sheriff's officer, alleges that Sheriff William Polhemus orchestrated and conducted a retaliatory campaign of harassment that violated his constitutional and statutory rights.  Palmieri has named Polhemus and Ocean County as defendants.

Palmieri's complaint contains three counts.  Count I, brought pursuant to 42 U.S.C. §1983, alleges First Amendment retaliation. Count II alleges state constitutional violations, and Count III alleges violations of the New Jersey Conscientious Employee Protection Act, N.J.S.A. 34:19-1 <u>et seq.</u>

Palmieri says Polhemus retaliated against him for engaging in protected political and expressive activity - specifically for 1) running against Polhemus for sheriff in 1997 and criticizing Polhemus during the campaign; 2) criticizing Polhemus while serving as president of the sheriff's officer's union; 3) offering additional criticism of Polhemus after 2000; and 4) filing an EEOC complaint against Polhemus in 2007.

The matter is before the Court on defendants' motion for summary judgment.  For the following reasons, the Court should deny defendants' motion:

<u>First</u>, Sheriff Polhemus is a "final decision-maker" whose actions embody official Ocean County policy insofar as its

1

treatment of Palmieri is concerned.  Polhemus concedes as much, and both state law and the day-to-day reality of running a sheriff's department confirm it.  The county is thus a proper defendant in this case.

Second, as a matter of law the First Amendment protects Palmieri's expressive activity.  Contrary to defendants' claim, Palmieri speech was not an "internal employee grievance."  It was political speech of surpassing First Amendment value, offered to the public in the context of a political campaign or union activity, by one citizen to others.  Defendants have offered no evidence that any of this speech disrupted the department's activity.

Third, Palmieri has adduced ample evidence from which a jury could infer his discipline was retaliatory.  Defendants' claim of a legitimate reason for punishing Palmieri thus raises an issue of fact that cannot be resolved on summary judgment.

Fourth, Palmieri has produced evidence that defendants shunted him into "dead-end" positions and denied him opportunities for overtime and advancement.  Contrary to defendants' claim, this evidence satisfies the minimal threshold for First Amendment injury.

Fifth, Palmieri's complaints to his supervisors about his mistreatment, and the intensified retaliation that ensued, adequately state and support a CEPA claim.

Sixth, Palmieri's state constitutional claim alleges retaliation for political activity, not retaliation for reporting his mistreatment.  It is thus independent of his CEPA claim, and is not waived by it.  Defendants' contrary argument confuses the two claims.

Seventh, Polhemus is not qualifiedly immune from Palmieri's §1983 claim.  Polhemus's actions violated Palmieri's First Amendment right to be free of retaliation for political expression.  Moreover, that right was clearly established at least a decade before Polhemus began to violate it.

## II.  **STATEMENT OF THE FACTS**

Plaintiff incorporates his Statement of Material Facts, submitted with this brief pursuant to L. Cv. R. 56.1.

## III. **ARGUMENT**

Summary judgment is governed by Fed. R. Civ. P. 56(c).  A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Id.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Brooks v. Kyler, 204 F.3d 102, 105 n.5 (3rd Cir. 2000).

An issue is "genuine" if a reasonable jury could hold in the non-movant's favor on that issue.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-8 (1986).  In deciding whether a genuine issue of material fact exists, the court must review the

3

underlying facts and draw all reasonable inferences in favor of the non-moving party. Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3rd Cir. 1995).

If the movant makes a properly supported showing of no triable issue of fact and entitlement to judgment as a matter of law, "its opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

The non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories or admissions on file, designate specific facts showing that there is a genuine issue for trial." Celotex Corp., 477 U.S. at 324 (quotations omitted); see also Big Apple BMW, Inc. v. BMW of North Amer., Inc., 974 F.2d 1358, 1363 (3rd Cir. 1992).

Even if a non-moving party has failed to establish a triable factual issue, a court should only grant summary judgment where "appropriate." Fed. R. Civ. P. 56(e). Accordingly, the case must be evaluated on its merits, and summary judgment may be granted only if the movant is entitled to judgment as a matter of law. Anchorage Associates v. Virgin Islands Bd. of Tax Rev., 922 F.2d 168, 175 (3rd Cir. 1989).

A.   As a Constitutional Officer and Statutory
     Head of the Sheriff's Department, Solely
     Responsible for Its Policies and Operations,
     Polhemus Is A "Final Policymaker" For The
     Department's Campaign of Retaliatory
     Harassment.

Ocean County argues it is not liable to Palmieri because
Sheriff Polhemus is not a "policymaker" whose actions bind the
county.  The claim is factually and legally untenable.

Under 42 U.S.C. §1983, a municipality is liable for its
employee's constitutional torts when the employee's conduct
embodies municipal policy or custom.  Monell v. Dept of Social
Services, 436 U.S. 658, 694 (1978).  A plaintiff may establish
policy in one of three ways: 1) when an individual acts pursuant
to a standard operating policy or procedure; 2) when an
individual has final policy making authority that renders his
behavior "official policy"; or 3) when an official with authority
has delegated authority to the employee or ratified his action.
Hill v. Borough of Kutztown, 455 F.3d 225, 245 (3rd Cir. 2006);
McGreevy v. Stroup, 413 F.3d 359, 367 (3rd Cir. 2005).

Palmieri alleges Polhemus had final policymaking authority
with respect to the department's treatment of him.  To determine
whether that is so, a court must assess whether as a matter of
state law the official is responsible for making policy in the
particular area of municipal business in question, McMillan v.
Monroe County, 520 U.S. 781, 785 (1997); and whether the

5

official's authority to make policy in that area is final and unreviewable.  St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988).

Thus, the issue here is whether Polhemus the final authority under state law, as the head of the Sheriff's department, to institute a policy of harassing Palmieri for the exercise of his First Amendment rights.  See Sheehee v. City of Wilmington, 67 Fed. Appx. 692, 696 (3rd Cir. 2005).  There is ample evidence that he did.

State law makes clear that insofar as Ocean County is concerned, Polhemus is the head of the Ocean County Sheriff's Department.  His office has constitutional status, requiring that he be popularly elected.  N.J. Const. (1947), Art. VII, §2, par. 2.  He has complete statutory authority over the sheriff's department, including policy, operations and all personnel matters.  See N.J.S.A. 40A:9-117 et seq.

The sheriff's authority in these areas is essentially absolute.  Although he is an "agent" of the county and "an integral part of its operations," as a general rule the freeholders have no power to review his actions.  See In re Application of Burlington County Freeholders, 188 N.J. Super. 343, 350-51 (Law Div.), aff'd 190 N.J. Super. 256 (App. Div. 1983), aff'd 99 N.J. 90 (1985).  And while the sheriff's status as a constitutional officer does not exempt him from the legislature's power to prescribe "the powers and duties incident

to this position," see In re Petit Jury Panels, 60 N.J. 554, 558 (1972), that does not mean that the legislature has the power to review his day-to-day management of the department, or his policy-making.

Polhemus himself recognizes his policy-making status.  By his own admission, he is the sheriff's department's final decision-maker, the man at the top of the organizational pyramid. He has final authority for all departmental policies and procedures, and for all departmental operations.  He is the person who determines what an officer's duties are, where an officer works, and when and for what reason an officer is transferred from one assignment to another.  Neither the freeholders nor the legislature can review or second-guess those specific decisions.

Polhemus thus had "final, unreviewable discretion" to take the retaliatory actions that were taken against Palmieri.  See Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3rd Cir. 1990).  He is therefore a "final policymaker" and his actions bind Ocean County in this case.

The county relies heavily on the unpublished opinion in Cacciatore v. County of Bergen, 2005 WL 3588489 (D. N.J. 2005) for its claim that Polhemus is not a policymaker.  But Cacciatore does not, and should not, govern here.

First, plaintiffs in Cacciatore presented no evidence that

7

the Bergen County sheriff was a final policymaker.  Instead, they
relied on a bald "statement that it is indisputable that [the
sheriff] is a policymaker."  Id. at *4.  Here, by contrast,
Polhemus himself has acknowledged his status as the department's
final decision-maker, not subject to either county or state
review for his policy, operational and transfer decisions.

Second, to the extent it suggests a county sheriff is a
state rather than a county officer, subject to legislative
supervision and day-to-day control, Cacciatore is, respectfully,
incorrect.  The very case it relies on – In re Application of
Burlington County Freeholders – makes exactly the opposite point.
It holds, in a determination ultimately affirmed by the state
Supreme Court, that a sheriff is a county officer.  See 188 N.J.
Super. at 350-51; see also 99 N.J. at 98-101.

Burlington County also makes clear that a sheriff's position
gives him final authority over the operation of his department
despite his status as a county "agent."  The case involves a
request by the board of freeholders for a court order, pursuant
to N.J.S.A. 40A:5-22, authorizing an independent investigation
into the sheriff's operation of his department.  The request for
a court order was only necessary because the freeholders did not
have the authority on their own to investigate.  See 188 N.J.
Super. at 345-46.

Finally, Cacciatore mistakes the legislature's ability to

8

statutorily regulate a sheriff's department for the capacity to oversee the department's quotidian operations.  The existence of the former authority simply does not mean that the legislature can, or would, review a sheriff's everyday operational decision-making.

In other words, as a matter of state law, Polhemus is the final authority in his department for everyday operations, including transfers and personnel management.  He recognizes and accepts that fact.  Were Ocean County's contrary argument accepted, then a sheriff's constitutional torts would rarely, if ever, be attributable to the entity of which he is a part.

Accordingly, the Court should reject the county's argument on this point and hold instead that Polhemus is a policymaker whose actions are attributable to Ocean County for purposes of 42 U.S.C. §1983.

> B.   The First Amendment Protects Palmieri's Speech.

"[T]he First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern."  Garcetti v. Ceballos, 547 U.S. 410, 417 (2006).  When the employee does so, the employer may sanction that speech only when it can demonstrate that its interests in "efficiency" outweigh the employee's free speech interests.  Rankin v. McPherson, 438 U.S. 378, 388 (1987).  Whether the First Amendment protects an employee's speech is a question of law.

9

<u>Curinga v. City of Clairton</u>, 357 F.3d 305, 310 (3rd Cir. 2004).

Defendants say Palmieri's speech is not protected by the First Amendment because it is in the nature of an "internal employee grievance."  The argument mischaracterizes the speech at issue.

Palmieri's statements, made as a political candidate, union president and interested citizen, are public speech of the highest order; they are as unlike "internal employee grievances" as it is possible to be.  Moreover, defendants have produced no evidence that Palmieri's speech disrupted the department.  The Court should reject defendants' argument and hold as a matter of law that the First Amendment protects Palmieri's speech.

> 1.   Palmieri's criticism of Polhemus and his
>      department was the protected political
>      speech of a citizen-candidate, not an
>      internal employee grievance.

Speech involves a matter of public concern if it can "be fairly considered as relating to any matter of political, social or other concern to the community." <u>Connick v. Myers</u>, 461 U.S. 138, 146 (1983).  Palmieri's speech concerns the policies, practices and operation of the Ocean County Sheriff's Department, and includes criticism of the manner in which Polhemus runs the department.  The operation of a public law enforcement agency is a matter of public concern, and speech about it is fully protected by the First Amendment.  <u>See</u> <u>Baldasarre v. State of New Jersey</u>, 250 F.3d 188, 196-97 (3rd Cir. 2001); <u>Watters v. City of</u>

10

Philadelphia, 55 F.3d 886, 893-94 (3rd Cir. 1995).

Furthermore, Palmieri spoke about Polhemus and the department in his capacity as a citizen, not "pursuant to his official job duties." Garcetti, 547 U.S. at 421.  The statements that engendered the retaliation in this case were made publicly and were not required as a matter of Palmieri's job.

Chief among these are the statements Palmieri made as a candidate for sheriff, in his campaign against Polhemus; and his criticism of Polhemus, uttered as an interested citizen.  To characterize these statements as "internal employee grievances" is to blink reality.

Speech uttered as part of a campaign for public office directly and unmistakably invokes the protection of the First Amendment.  Eu v. San Francisco County Democratic Cent. Comm., 489 U.S. 214, 233 (1989).  Moreover, whether or not uttered by a candidate, political speech generally is at the First Amendment's core.  "Discussion of public issues and debate on the qualifications of candidates are integral to the operation of the system of government established by our Constitution.  The First Amendment affords the broadest protection to such political expression in order 'to assure the unfettered interchange of ideas for the bringing about of political and social changes desired by the people.'" McIntyre v. Ohio Elections Comm'n, 514 U.S. 334, 346 (1995), (quoting Roth v. United States, 354 U.S.

476, 484 (1957).

Accordingly, Palmieri's speech about Polhemus, whether or not uttered as a candidate, is protected by the First Amendment. That Palmieri may have also complained about Polhemus internally does not render his public speech less "public," or transform it into an "internal grievance."

Similarly, the First Amendment protects speech about an issue of public concern by a union official, even when that speech is uttered in the course of collective bargaining or negotiations.  See Justice v. Danberg, 571 F. Supp. 2d 602, 609-10 (D. Del. 2008)(prison employee and union official spoke "as a citizen" during bargaining); see generally Thomas v. Collins, 323 U.S. 516, 532 (1945)("free discussion concerning the conditions in industry and the causes of labor disputes appears to us indispensable to the effective and intelligent use of the processes of popular government").  If union bargaining is protected, then Palmieri's critical comments about the department and Polhemus, uttered during his tenure as a FOP president, and his union activity in general, are even more worthy of First Amendment protection as "citizen speech."

Palmieri also filed an EEOC complaint in 2007, in which he recounted the retaliation he suffered for his expressive activity, including differential treatment in connection with a transfer and the discharge of his duties.  That complaint

12

engendered additional retaliation.

Filing an EEOC complaint is a form of petitioning the government and is also protected "citizen speech" under the First Amendment.  Anderson v. Davila, 125 F.3d 148, 161 (3rd Cir. 1997). See Brennan v. Norton, 350 F.3d 399, 417 (3rd Cir. 2003); Herr v. Pequea Tp., 274 F.3d 309 (3rd Cir. 2001).  See also, Muzslay v. City of Ocean City, 238 Fed. Appx. 785, 789 (3rd Cir. 2007)(filing of tort claims notice protected by First Amendment).

Palmieri's speech does not lose its protected character merely because it involved the subject matter of his job, or conveyed information he may have learned there.  Speech by "the members of a community most likely to have informed and definite opinions" about an issue benefits the public discussion of it. Pickering v. Board of Education, 391 U.S. 563, 572 (1968); see Czurlanis v. Albanese, 721 F.2d 98, 104-05 (3rd Cir. 1983).

Defendants try to analogize this case to Connick v. Myers, supra, but the comparison fails.  Connick involved an internal questionnaire about job satisfaction circulated by one assistant district attorney to her colleagues.  461 U.S. at 141.  That is a far cry from general public statements, made in the course of a political campaign, or as a union official, or to a newspaper. If Palmieri's statements are deemed "internal," then public employees have no speech rights at all.

13

2.   Defendants offer no evidence that
     Palmieri's protected speech disrupted
     the department's operations.

A public employer bears the burden of justifying punishment

for protected speech.  It must demonstrate that its interests in

avoiding disorder and inefficiency outweigh the speech's value.

Baldesarre, 250 F.3d at 198.  The Supreme Court first articulated

this "balancing test" in Pickering v. Board of Education, supra.

The public's interest in the expression is a significant

factor in this balance.  O'Donnell v. Yanchulis, 875 F.2d 1059,

1061 (3rd Cir. 1989).  The more substantially an employee's

speech implicates public interests, the stronger the necessary

showing of disruption.  Connick, 461 U.S. at 152.

Moreover, in cases involving "public speech," the employer

must demonstrate the employee caused "an actual disruption" to

outweigh the employee's interest in free expression.  Swineford

v. Snyder City, Pa., 15 F.3d 1258, 1272 (3rd Cir. 1994); Zamboni

v. Stamler, 847 F.2d 73, 78 (3rd Cir. 1988).  And even that

showing does not necessarily permit the employer to suppress

speech.  "The presumption in favor of free speech is great, and a

mere showing of disruption is not, by itself, sufficient for a

determination that an employee's speech is not protected."

Swineford, 15 F.3d at 1272, citing O'Donnell, 875 F.2d at 1062.

Here, as noted above, Palmieri's speech lies at the core of

the First Amendment's guarantees.  It implicates public interests

14

and expressive values of the highest order.  Defendants, by
contrast, have produced no evidence that the speech caused any
disruption, disorder or inefficiency.  In fact, Polhemus has
conceded it did not.

Accordingly, as a matter of law, the First Amendment balance
tips in Palmieri's favor.  The Court should so hold.

C.   Because Palmieri Has Produced Evidence of
     Retaliatory Motive, Defendants' Claim of a
     Legitimate Justification Merely Creates a
     Factual Issue That Cannot Be Decided on
     Summary Judgment.

Defendants claim they had a legitimate, non-retaliatory
basis for punishing Palmieri and argue they are entitled to
judgment on that basis.  The claim rests on a faulty legal
premise.

Retaliatory motive is a question of fact.  Montiero v. City
of Elizabeth, 436 F.3d 397, 405 (3rd Cir. 2006); McGreevey v.
Stroup, 413 F.3d at 365-66; Curinga, 357 F.3d at 310.  So long as
a plaintiff has presented evidence from which a reasonable jury
can infer retaliation, summary judgment is inappropriate.

Here Palmieri has produced ample evidence to support a claim
of retaliatory motive.  In his deposition and interrogatory
answers, Palmieri has testified to a pattern of harassment,
dating from when he first challenged Polhemus and continuing to
this day.  Palmieri's colleagues have confirmed it, and have said
that they consider it retaliatory.  Palmieri has repeatedly been

15

singled out for special, detrimental treatment in the department.

Defendants suggest the lapse of time since Palmieri first ran for office eliminates any retaliatory motive on their part. But Palmieri's evidence rebuts that claim, and in any event a time delay is not dispositive when evidence of ongoing animosity exists.  See Abramson v. William Paterson College, 260 F.3d 265, 288 (3rd Cir. 2001). Here there is evidence of such ongoing animosity; in fact, the harassment only ceased during the brief period in 2000 that Palmieri "collaborated" with Polhemus as an independent candidate.

Whether Palmieri's treatment is retaliatory is thus an issue of fact.  The Court should reject defendants' effort to obtain summary judgment on that basis.

D.   Palmieri Has Presented Sufficient Evidence of Injury To Meet The Minimal Standards of the First Amendment.

Defendants suggest Suppan v. Dadonna, 203 F.3d 228, 235 (3rd Cir. 2000), imposes a heightened standard on Third Circuit plaintiffs, requiring them to show that a defendant's conduct would have deterred "a person of ordinary firmness" from speaking.  They claim Palmieri has not satisfied that standard.

This argument gets the law backwards.  Suppan establishes that the level of injury required for a First Amendment claim is relatively minimal; it does not impose some heightened, circuit-specific standard of proof.  In fact, it cites Rutan v.

16

Republican Party, 497 U.S. 62, 76 n.8 (1990) for the proposition that "even an act of retaliation as trivial as failing to hold a birthday party," if retaliatory, could violate the First Amendment.  203 F.3d at 234.   And it makes clear that this issue is one of fact, inappropriate for summary resolution.  Id. at 233.

     In any event, Palmieri has met Suppan's standard.  He has adduced evidence that he has been consigned to a series of dead-end or undesirable jobs, denied the ability to make overtime, and generally given unpalatable assignments.  "Employees who find themselves in dead-end positions due to their political background are adversely affected."  Rutan, 497 U.S. at 73.

     Palmieri has thus suffered First Amendment injury.  The Court should reject defendants' contrary claim.

          E.   Palmieri's Complaints About Polhemus's
               Harassment, And Ensuing Ongoing Retaliation,
               Are Adequately Supported By Evidence and
               Support A CEPA Claim.

     Defendants say Palmieri has failed to establish his CEPA claim.  The facts demonstrate otherwise.

     CEPA requires a plaintiff to establish that: 1) he reasonably believed his employer's conduct violated the law or a clear mandate of public policy; 2) he performed a "whistleblowing" activity described in CEPA; 3) an adverse employment action was taken against him; and 4) his "whistleblowing" caused the adverse employment action.  N.J.S.A.

17

34:19-3; <u>McCullough v. City of Atlantic City</u>, 137 F. Supp. 2d
557, 573 (D. N.J. 2001); <u>Dzwonar v. McDevitt</u>, 177 N.J. 451, 462
(2003).  "Whistleblowing activity" includes both disclosure to a
supervisor or public body, N.J.S.A. 34:19-3(a); and objection to
the unlawful practice.  N.J.S.A. 34:19-3(c).

These requirements must be liberally construed to effectuate
CEPA's important social goals.  <u>See</u> <u>Green v. Jersey City Bd. of</u>
<u>Educ.</u>, 177 N.J. 434, 448 (2003).  Palmieri has alleged and
adduced facts that establish each of them.

First, as demonstrated in Points B through D of this
argument, Palmieri reasonably believed Polhemus was violating the
state and federal constitutions by retaliating against him for
his political activity.

Second, Palmieri objected to and disclosed this unlawful
activity.  He complained about the retaliation to his
supervisors.  In 2007, he filed a complaint with the EEOC,
objecting to the retaliatory harassment.  Filing an EEOC charge
is protected whistleblowing activity under CEPA.  <u>Sandom v.</u>
<u>Travelers Mortgage Service, Inc.</u>, 752 F. Supp. 1240, 1244 (D.
N.J. 1990).[1]

Third, after lodging these objections, Palmieri was subject

---

1 But see <u>Smith v. Travelers Mortgage Services, Inc.</u>, 699 F.
Supp. 1080 (D. N.J. 1988).  <u>Sandom</u> rejects <u>Smith</u>; this Court
should do likewise.

to continued, and intensified harassment.  In particular, he was transferred to the Police Academy, given a demeaning assignment with no responsibility, and denied any overtime.  This sort of treatment constitutes an adverse employment action under CEPA.  See Maimone v. City of Atlantic City, 188 N.J. 221, 237-38 (2006).

Finally, it is a reasonable inference that the harassment of Palmieri that followed his objections was caused, in significant part, by his whistleblowing activity.  For example, defendants were aware of Palmieri's EEOC complaint.  And his transfer to the Police Academy came in 2008, several months after the EEOC declined his complaint and he filed this action.  Moreover, Palmieri is the only officer in the department who has been subjected to this treatment.  Two supervisors believed the Sheriff's actions were retaliatory.  These facts are sufficient to establish the necessary causal nexus between whistleblowing and adverse action. Maimone, 188 N.J. at 238-39; Hancock v. Borough of Oaklyn, 347 N.J. Super. 350, 361 (App. Div. 2002).

     F.    Palmieri's CEPA Claim Does Not Trigger a
            Waiver of His State Constitutional Claim.

Defendants say Palmieri has waived his state constitutional claim by bringing a CEPA claim.  Defendants have confused two independent claims.

N.J.S.A. 34:19-8 does provide that institution of a CEPA claim waives any parallel claims under state law. See Young v.

19

Schering Corp., 141 N.J. 16, 29 (1995).  But that "waiver
exception" only applies to "parallel" claims; it "does not apply
to those causes of action that that are substantially independent
of the CEPA claim."  Id.

CEPA prohibits retaliation for "whistleblowing" – that is,
for reporting or objecting to an unlawful practice.  See N.J.S.A.
34:19-3.  Palmieri's state constitutional claims allege
retaliation not for whistleblowing, but his for political, union
and petitioning activity.  They are thus independent of his CEPA
claim, and are not waived by it.

Defendants' contrary argument improperly conflates these two
distinct claims.  The Court should accordingly reject it.

G.    Because Palmieri's Speech Was Protected and
      Because His Right to Be Free of Retaliation
      Was Clear, Polhemus Is Not Entitled To
      Qualified Immunity

Polhemus claims he is qualifiedly immune from Palmieri's
§1983 claim.  See Anderson v. Creighton, 483 U.S. 635 (1987);
Harlow v. Fitzgerald, 475 U.S. 800 (1982). The claim rests on a
misstatement of the law.

To determine whether a defendant is qualifiedly immune, a
court must first determine whether plaintiff has established the
violation of a constitutional right; if so, it must then
determine whether, viewed from a reasonable official's
perspective, the right was "clearly established" when the
defendant violated it.  Saucier v. Katz, 533 U.S. 194, 201

20

(2001).  The right at issue must be defined "at the appropriate level of specificity."  Wilson v. Layne, 526 U.S. 603, 615 (1999).

As noted above, see Points B through D of this Argument, Palmieri has adduced facts that, if accepted by a jury, establish a violation of his First Amendment right to be free of retaliation for engaging in protected political speech.  The issue is therefore whether that right, appropriately defined, was "clearly established" in 1997, when Polhemus began his campaign of retaliatory harassment against Palmieri.

Whether a right is "clearly established" turns on "the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken."  Anderson v. Creighton, 483 U.S. at 639.  A court must determine whether "reasonable officials, in the defendants' position at the relevant time, could have believed, in light of what was in the decided case law, that their conduct would be lawful."  Doe v. Delie, 257 F.3d 309, 318 (3rd Cir. 2001).

In Bennis v. Gable, 823 F.2d 723, 731 (3rd Cir. 1987) the court held that a police officer has a constitutional right to be free of retaliation – even retaliation short of discharge – for his political activity.  The court relied on the Supreme Court's decisions in Pickering v. Board of Educ., supra, decided in 1968; and Branti v. Finkel, 445 U.S. 507 (1980), and Elrod v. Burns,

427 U.S. 347 (1976).

The unconstitutionality of Polhemus's conduct was thus "clearly established" in this circuit well before he acted.  See also Baldesarre v. State of N.J., supra, 250 F.3d at 201 (citing cases).  No reasonable official in his position in 1997 could have believed he was acting constitutionally in punishing Palmieri for his political speech.

Polhemus says Palmieri must also show that Polhemus personally thought his conduct violated Palmieri's rights.  This claim misstates the governing law.  "Reasonable belief" is the objective measure of whether a right is clearly established, not an additional subjective standard for judging a particular defendant's behavior after a clearly established right has been shown.  The Court should reject Polhemus's flawed reasoning on this point.

## IV.  CONCLUSION

For the foregoing reasons, the Court should deny defendants' motion for summary judgment in its entirety.

DATED:                   Respectfully submitted,
11/2/09
                         BARRY, CORRADO, GRASSI & GIBSON, PC


                         __s/ Frank L. Corrado_____
                         FRANK L. CORRADO, ESQUIRE


22